Ouria, per Withers, J.
An action of debt has been brought in the name of the State of South Carolina against C. M. Kennedy, upon his official bond as late sheriff of the district of Laurens, by Thompson and Hendeison, who style themselves plaintiff’s attorneys. The first count alleges, as a breach of defendant’s bond, that he did not turn over to his successor in office, all the books and papers appertaining to. his office, as by law required; and for this, the whole penalty-of his bond, ($20,000) is demanded as a forfeiture, and claimed for the State.
The breach set foith in the second count, is to the purport following: — that defendant neglected and refused to turn over, upon the expiration of his term of office, on the 10th day of February, 1845, to his successor in office, certain official books pertaining to the sheriff’s office, which are specified; and also sundry writs of fieri facias, likewise specified; and for this default, the penal sum of one thou *164 sand dollars is demanded, according fo a certain section of the sheriff’s law hereafter to be set forth.
To the first count, a general traverse or negation is filed by the defendant.
To the second count, a special plea is put in, to the effect, that the defendant did turn over to his successor in office the specified books, and all papers pertaining to the sheriff’s office, except the executions described in the second count; that, as to them, he was not bound to turn them over, because some had been delivered to the attorney and agent of plaintiffs; some had been retained by himself because he had assumed the payment of them; some were satisfied, in fact, before his term expired, but not so marked at the request of the attorneys of the plaintiffs therein ; some had been returned satisfied to the clerk; some he, defendant, had retained at the instance of plaintiffs or their attorneys; one he had retained by agreement with the plaintiff therein, to re-im-burse what the said plaintiff owed him. So defendant alleged all had been disposed of legally, and he was not bound to turn them over to his successor.
The two pleas above described concluded to the country, and issue was joined thereon.
The statute of limitations was pleaded and traversed ; that is to say — the' forfeiture or penalty, if any had been incurred, might have been sued for more than six months before action was instituted.
Tins action was founded on the following section, (being the 7th) of the Act of Assembly of 1839, concerning the sheriff’s office, to wit: — “ It shall be the duty of every sheriff to turn over to his successor, all the furniture appertaining to his office, the original writ. book and sale book, and also the original execution book, or a correct certified copy thereof; and also, all original bonds officially taken by him, all mesne process not served, and all final process partially or wholly unexecuted; and if any sheriff be dead, his personal representative shall so turn over the matters aforesaid; and the successor shall be bound to execute a receipt, and duplicate to be lodged in the clerk’s office, specifying the matters and things so received by him, instead of the mode heretofore prescribed, and he shall be responsible for them; the retiring sheriff or his successor, neglecting or refusing obedience to the requisitions herein, shall, respectively, upon conviction by indictment, be liable to a fine of one thousand dollars; or an action of debt may be instituted upon the official bond of any defaulting sheriff, in this behalf, for the penalty aforesaid. And it shall be the duty of such predecessor, who has levied upon personal property and not sold it, to deliver it to his successor at the time of turning over *165 such books, bonds and process, taking his receipt for the same, who is authorized to sell such property.”
The question is, whether this action, alleging no grievance on the part of any particular person, but demanding — first, the whole penalty of Kennedy’s bond ; second, the forfeiture of one thousand dollars under the section of the act above quoted, can be allowed to be prosecuted by those who do not represent the State, the solicitor of the circuit being present, and though engaged as assistant counsel against defendant, yet, disclaiming the action as originated or prosecuted by him in his official character.
The declaration in the present case does not contain averments suited to the remedy contemplated by the Act of 1829, (p. 22, A. A. of that year) to wit: — “ The bond of any public officer in this State may, at all times, be sued by the public, or any corporation or private person aggrieved by any misconduct of any such public officer,” for which purpose, it is provided, a copy shall be furnished by the Treasurer to any person applying for one.
Now the bond, though sued on in this case in the name of the public, is not sued on by the authority of the public; if suit be instituted by a “private person,” neither the name of that person is set forth nor his grievance alleged.
How can a private person sue for the penalty of one thousand dollars, eo nomine 1 In Bacon’s Abridgment, title “ action qui tarn A.” it is said, “ wherever a statute prohibits a thing as being an immediate offence against the public good in general under a certain penalty, and the penalty, or a part of it, is given to him who will sue for it, any person may bring such action or information, and lay his demand tam fro domino rege quam fro seif so “ but, (as the Editor adds m a commentary upon the text) unless such penalty be given, no private person can sue, for the whole penalty goes to the Kingand for this, several authorities are cited.
There have been various instances of legislation intended to secure the proper tradition of books and papers by an outgoing sheriff to his successor. In 1769, it was enacted sheriff of each district or precinct shall, at the expiration of his term of office, turn over to the succeeding sheriff, by indenture and schedule, all such writs and process as shall remain in his hands unexecuted,” and, in case of default, “shall be liable to make such satisfaction, by damages and costs, to the party aggrieved, as he shall sustain by such •neglect or refusal.” By the Act of Assembly of 1791, there was added as follows: — “ and also all executions whereon he hath not made actual sale of the property levied by virtue of such executions to the amount of the demands of the plaintiffs in such suits.” In the same year, sheriffs were required to keep their offices at the Court Houses, “ on pain of for *166 feiting their respective offices” — “and a fair and true copy of the books of every sheriff, now in office or hereafter be in office, shall be made at his own expense, in books weq anc[ strongly bound, and shall be lodged within three months after the expiration of his office, and be kept as public records in the respective offices of the several sheriffs for the time being throughout this State, on pain of forfeiting five hundred pounds.” In 1797, an Act was passed “to compel all District Sheriffs or Provost Marshalls heretofore appointed in this State, or their representatives, to lodge, in the offices therein mentioned, the books of their respective offices.” Neglect or refusal to comply, on or before the 1st July then next ensuing, it was declared, should involve the forfeiture and payment of two hundred dollars, “one-fourth part to the benefit of such person or persons as shall sue for and recover the same, and the rest to the State.”
Then comes the provision in the Act of 1839, heretofore cited, requiring the furniture and the original books of the sheriff’s office to be turned over, instead of copies, except the execution book, (which was required to contain original receipts) enlarging the list of papers to be turned over and specifying them, and requiring a duplicate specific schedule thereof, with receipt of successor to be filed in the clerk’s office, “ instead of the mode heretofore prescribed ,. and predecessor or successor, on default as to what was required of him, was dec’ared liable to a forfeiture, upon conviction' on indictment, or by action of debt, of one thousand dollars.
Our construction is, that this penalty is one to be demanded by and for the State, not by or for any private' person, nor through the means of a qui tarn action; while we recognize the right of a private person to avail himself, for a grievance, set forth and proved, of an action on a sheriff’s bond, in virtue of the Act of 1829, whether the grievance arise from disobedience, in the out-going sheriff, to the Act of 1839, in turning over what pertains to his office to his successor, or from default by the successor in what he is required to do; or from any other default inofficial duty by either of them. Thus the private person will have his redress for an injury already sustained, by such damages as are commensurate with the character and degree of that injury. The public may enforce, through indictment or ac-' tion of debt, a preventive policy, by seeking the penalty of one thousand dollars, for the default of which it is made a consequence. The remedies, in this view, seem to be complete and sufficient, for the State and the individual, if they be rigorously applied. The idea seems incongruous, that an individual, shewing no grievance or injury, should set in motion, in the name of the State, an action of debt for the penalty of one thousand dollars, founded upon the allegation *167 that the out-going sheriff had not turned over a table, or that the incoming sheriff had not executed a receipt for some trover or bail bond. This ought to be left to the discretion of the known representative of the State.
It has become unnecessary to express any opinion upon the question arising out of the plea of the statute of limitations. It has appeared already, that when copies of books were demanded of the retiring sheriff, three months were allowed to him to supply them. No period for a like purpose is fixed in the Act of 1839. Whether much time to do what is now required of the retiring sheriff be necessary, may be considered when we have to meet the question. Original writ and sale books are required to be turned over— a copy of the execution book may be kept in progress, pari passu, during the term of service. To specify the furniture, can require but little time. If the Act of 1827 be-obeyed, a schedule of final process will be returned every six months to the Court of Common Pleas, classified. In very few instances can it require much time to specify other original papers; and in all cases, in proportion as the retiring sheriff has kept his office well, will the preparatory labour of turning it over to a successor, be diminished. The original papers themselves will always be there, and any of them may be used, upon an exigency, by the in-coming sheriff, though the schedule be not complete. Possibly, one might be indicted or sued for not completing the transfer of his office before it was possible or reasonably practicable to effect it, and successfully defend himself, on that ground, while the cause of action might be held to have accrued on the indictable offence to have been committed, in the technical sense.
Such suggestions are dropped for consideration — we leave the question open.
Since we see nothing of error in the result upon circuit, it remains only to say, that the motion in this caséis dismissed.
Evans, Wardlaw. and Frost, JJ. concurred.

Motion refused.